**Ex Parte Billy NOYOLA, Applicant.**

**No. AP–75,428.**

Court of Criminal Appeals of Texas.

Feb. 28, 2007.

Billy Noyola, pro se.

Bruce M. Anderson, Asst. District Atty., Corpus Christi, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

KEASLER, J., delivered the opinion for a unanimous Court.

Billy Noyola challenges the Texas Department of Criminal Justice's refusal to grant him street-time credit under Section 508.283, Texas Government Code. We find that Noyola is entitled to the time credit because his conviction for aggravated assault on a peace officer, a third-degree felony, was not an offense or a statutory precursor to an offense listed in Section 508.149(a), Texas Government Code, when his parole was revoked.

### Facts and Procedural Background

On August 14, 1987, Noyola committed the felony offense of burglary of a habitation. In January 1988, Noyola pled guilty and entered a plea of true to the enhancement paragraph in the indictment, which alleged that Noyola had previously been convicted of burglary of a habitation in 1984. The trial judge found Noyola guilty, and after determining that the enhancement allegation was true, the judge sentenced Noyola to eighteen years' imprisonment. Noyola did not appeal.

Noyola committed the offense of aggravated assault on a peace officer, in violation of Section 22.02 of the Penal Code, on September 27, 1992. On December 10, 1992, Noyola was convicted of this offense and sentenced to ten years' imprisonment, to be served concurrently with the remainder of his eighteen-year sentence for burglary of a habitation. Although the trial court's judgment designates the offense as a second-degree felony, the State, after a

thorough review of the records in that cause, submits that Noyola was actually convicted of the third-degree-felony offense of aggravated assault on a peace officer. Our own review of the record confirms that Noyola's conviction is for a third-degree-felony offense.

Noyola was released to parole on April 10, 2000. Approximately four years later, on April 5, 2004, the Texas Department of Criminal Justice (TDCJ) issued a pre-revocation warrant. Noyola's parole was later revoked.

After exhausting his administrative remedies,[1] Noyola filed an application for a writ of habeas corpus challenging TDCJ's refusal to credit his eighteen-year sentence under Section 508.283(c) of the Texas Government Code for time he spent on parole. Noyola contends that TDCJ is improperly denying him time credit due to his 1992 conviction for aggravated assault on a peace officer.

■ Noyola was confined pursuant to the ten-year sentence when his parole was revoked and when he filed his habeas application. Noyola recently completed his ten-year sentence. The fact that Noyola discharged his ten-year sentence does not render his time-credit claim moot, however, because he is still confined under his eighteen-year sentence for burglary of a habitation.

In its second supplemental answer, the State argues that Noyola's 1992 conviction for aggravated assault on a peace officer in the third degree renders him ineligible for street-time credit. Noyola is ineligible, according to the State, because he was ineligible for release on mandatory supervision under the statute in effect when he com-

mitted the offense of aggravated assault on a peace officer, Article 42.18, Section 8(c) of the Code of Criminal Procedure.

Agreeing with the State, the trial judge has recommended that relief be denied, stating "Based upon the law in effect at the time Applicant committed the offense of aggravated assault on a peace officer, the Court recommends denial of all relief requested in the application for writ of habeas corpus."

We filed and set this case to decide whether an inmate's eligibility for street-time credit under Section 508.283(c) of the Government Code is controlled by the inmate's eligibility for release to mandatory supervision. Stated another way: Is the mandatory supervision statute in effect at the time the inmate committed the offense used to determine the inmate's eligibility for time credit under Section 508.283(c), Texas Government Code, when the inmate's release to mandatory supervision or parole is revoked? The answer is no.

## Law and Analysis

■ Section 508.283(c), commonly referred to as the "street-time credit statute," applies to all revocations of parole and mandatory supervision that occur on or after September 1, 2001.[2] When Noyola's parole was revoked the statute read as follows:

If the parole, mandatory supervision, or conditional pardon of a person other than a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. For a person who on the date

---

1. Tex. Gov't Code Ann. § 501.0081 (Vernon 2004) (originally added by Acts 1999, 76th Leg., ch. 1188, § 1.38(a), eff. Sept. 1, 1999).

2. *Ex parte Spann*, 132 S.W.3d 390, 392 (Tex. Crim.App.2004) (quoting Tex. Gov't Code Ann. § 508.283 (Vernon 2004)); *Ex parte Byrd*, 162 S.W.3d 250, 252 (Tex.Crim.App.2005) (citing Acts 2001, 77th Leg., ch. 856, § 11).

of issuance of a warrant or summons initiating the revocation process is subject to a sentence the remaining portion of which is greater than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for the time from the date of the person's release to the date of revocation. For a person who on the date of issuance of the warrant or summons is subject to a sentence the remaining portion of which is less than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for an amount of time equal to the remaining portion of the sentence on the date of issuance of the warrant or citation.[3]

Therefore, under Section 508.283(c), an inmate may be entitled to credit for time served while released on parole or mandatory supervision if the inmate meets the following two conditions: (1) the inmate is not "a person described by Section 508.149(a)" of the Texas Government Code[4]; and (2) on the date that the pre-revocation warrant or summons initiating the revocation process is issued, the remaining portion of the inmate's sentence is less than the time the inmate spent on parole.[5] The remaining portion of the inmate's sentence "refers to that part of the sentence remaining at the RELEASE date, less time spent on parole [or mandatory supervision]."[6] Section 508.283(c) serves to "lessen the sentence of non-violent parole violators (versus violent parole violators) whose time spent out on parole exceeded their remaining sentence."[7]

Because Section 508.283(c) refers to Section 508.149(a), we turn our attention to that provision. When describing Section 508.149(a) in the past, we have said that it "sets out a list of offenses that render an inmate ineligible for mandatory supervision. These offenses are described by code, section number, and the degree of the felony."[8] The most serious or violent offenses are included in the list.[9] Since the 2001 amendment to Section 508.283(c), the enumerated offenses in Section 508.149(a) have included current offenses and prior convictions. Section 508.149(a) precludes the release of an inmate "to mandatory supervision if the inmate is serving a sentence for or has previously been convicted of" an enumerated offense.[10]

■ We begin by considering whether Noyola meets the first condition under Section 508.283(c) that would entitle him to street-time credit. It is well-established that an inmate's eligibility for release to mandatory supervision is controlled by the mandatory supervision statute in effect on the date that the inmate committed the offense.[11] The law governing mandatory

---

3. TEX. GOV'T CODE ANN. § 508.283(c) (Vernon 2004).

4. TEX. GOV'T CODE ANN. § 508.283(c); *Ex parte Byrd,* 162 S.W.3d at 251–52.

5. TEX. GOV'T CODE ANN. § 508.283(c); *Ex parte Spann,* 132 S.W.3d at 393; *Ex parte Byrd,* 162 S.W.3d at 251–52.

6. *Ex parte Spann,* 132 S.W.3d at 396 (emphasis in original).

7. *Id.* at 393–94.

8. *Ex parte Byrd,* 162 S.W.3d at 252.

9. *Ex parte Ervin,* 187 S.W.3d 386, 389 (Tex. Crim.App.2005); *Ex parte Spann,* 132 S.W.3d at 394.

10. TEX. GOV'T CODE ANN. § 508.149.

11. *Ex parte Thompson,* 173 S.W.3d 458, 459 (Tex.Crim.App.2005) (citing *Ex parte Hall,* 995 S.W.2d 151, 152 (Tex.Crim.App.1999)); *Ex parte Mabry,* 137 S.W.3d 58, 62 n. 10 (Tex.Crim.App.2004) (Keasler, J., concurring).

supervision eligibility provides the basis for the State's argument here. The State contends that Noyola is not entitled to street-time credit because Noyola's conviction for aggravated assault on a peace officer in the third degree under Section 22.02, Penal Code, renders Noyola ineligible for mandatory supervision under the statute in effect when he committed the offense, Texas Code of Criminal Procedure, Article 42.18, Section 8(c)(5).

In *Ex parte Byrd*, we were confronted with a similar issue. In that case, the State claimed that the applicant's 1990 aggravated assault on a peace officer conviction, which the applicant had committed in 1986, rendered the applicant ineligible for street-time credit under Section 508.283(c) because the applicant was a person described by Section 508.149(a).[12] In contrast to the argument presented by the State here, the State asserted that "when § 508.283 refers to § 508.149(a), it means the version in effect at the time of revocation rather than whatever predecessor version controls the prisoner's mandatory supervision eligibility."[13] The list of offenses in Section 508.149(a) under the version in effect at the time of the applicant's revocation included the " 'first degree felony or a second degree felony [of aggravated assault] under *Section 22.02, Penal Code.*' "[14] We assumed that the State's interpretation of Section 508.283(c) was correct and determined that the applicant was not a person described by Section 508.149(a) because the applicant's conviction for aggravated assault on a peace

officer under Section 22.02 of the Penal Code was a third-degree-felony offense.[15]

Today we must decide the issue that we left unresolved in *Byrd*—which version of the mandatory supervision statute is used to determine an inmate's eligibility for street-time credit under Section 508.283(c)—the statute in effect at the time of the revocation or the statute in effect at the time the inmate committed the offense for which he is confined.

▪▪▪ We begin by examining the relevant text of Section 508.283(c) that was in effect when Noyola's release was revoked. That text, the first sentence in that section, states: "If the parole, mandatory supervision, or conditional pardon of a person other than a person described by Section 508.149(a) is revoked, . . . ." When reviewing this language to "discern the fair, objective meaning of th[e] text at the time of its enactment," we focus on the "literal text."[16] And we will give effect to the plain meaning of the statutory text unless the "application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended[.]"[17] Thus, we may consult " 'extra-textual factors' such as legislative history only when the plain language of the statute is 'ambiguous' or when a literal interpretation would lead to 'absurd results.' "[18]

▪▪▪ The plain language of Section 508.283(c) unambiguously refers to Section 508.149(a); it does not refer to any previous version of the statute and does not exclude from its application inmates who

**12.** *Ex parte Byrd*, 162 S.W.3d at 251.

**13.** *Id.* at 252 (internal citation omitted).

**14.** *Id.* (quoting Tex. Gov't Code § 508.149(a)(7)) (original emphasis).

**15.** *Id.* at 252–53.

**16.** *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

**17.** *Id.* (emphasis in original).

**18.** *Ex parte Spann*, 132 S.W.3d 390, 393 (Tex. Crim.App.2004) (quoting *Boykin*, 818 S.W.2d at 785).

are ineligible for release to mandatory supervision. If we accepted the State's argument—that an inmate is not eligible for street-time credit under Section 508.283(c) if the inmate's holding offense renders the inmate ineligible for mandatory supervision—we would be forced to go beyond the statutory text. Our precedent governing statutory construction, however, does not permit such an approach where the statutory language is clear and unambiguous. When that is the case, courts must not add to or subtract from the statutory text.[19]

Our application of the plain language of Section 508.283(c) does not lead to an absurd result that the Legislature could not have intended. The Legislature intended Sections 508.283(c) and 508.149(a) to work in tandem when determining whether an inmate is eligible for street-time credit. The starting point is the version of Section 508.283(c) in effect when the inmate's parole or mandatory supervision is revoked.[20] By incorporating Section 508.149(a) by reference, Section 508.203(c) invokes the version of Section 508.149(a) in effect when the inmate's parole or mandatory supervision is revoked.[21]

■ Now we must ask the following question: Was Noyola "a person described by Section 508.149(a)" when his release to parole was revoked? The version of Section 508.149(a) in effect when Noyola's release was revoked in 2004 stated: "An inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has previously been convicted of: ... (7) a first degree or a second

degree felony under Section 22.02, Penal Code; ...." When Noyola's parole was revoked, he was confined pursuant to his ten-year sentence for aggravated assault on a peace officer. So, the relevant inquiry is whether Noyola was "serving a sentence for" a first- or second-degree-felony offense of aggravated assault under Section 22.02, Penal Code, when his parole was revoked. Noyola was convicted of the third-degree-felony offense of aggravated assault on a peace officer under Section 22.02 of the Penal Code, and as a result, Noyola was not a person expressly described by Section 508.149(a). But as we observed in *Ex parte Byrd,* the fact that an offense is not expressly included Section 508.149(a) is not necessarily dispositive of whether an inmate can be classified as "a person described by Section 508.149(a)" when the inmate's release is revoked.[22]

In *Ex parte Ervin,* we held that Section 508.149(a) "includes the predecessors to the enumerated offenses that currently make an inmate ineligible for mandatory supervision release."[23] As a result, "[i]nmates who have been convicted of a predecessor to one of the enumerated offenses are ineligible for mandatory supervision release."[24] Pointing to the changes made to the mandatory supervision statute since it was first enacted in 1977, we reasoned that "[t]he legislature has demonstrated, over time, an increasing interest in making inmates who have committed serious crimes in the past ineligible for mandatory

19. *Coit v. State,* 808 S.W.2d 473, 475 (Tex. Crim.App.1991) (citing *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Crim.App.1967)).

20. *See Ex parte Spann,* 132 S.W.3d 390, 392 (Tex.Crim.App.2004) (quoting Tex. Gov't Code Ann. § 508.283).

21. *See* Tex. Gov't Code Ann. § 311.027 (Vernon 2004).

22. 162 S.W.3d at 253.

23. 187 S.W.3d at 389.

24. *Id.*

supervision release." [25]

We will assume, as we did in *Ex parte Byrd,* that "*Ervin's* holding regarding mandatory supervision eligibility extends, *via § 508.283's* reference to *§ 508.149(a),* to street-time eligibility[.]" [26] Therefore, we must look at the "essential characteristics (the criminal conduct, mental state, and accompanying circumstances)" [27] of Noyola's conviction for aggravated assault on a peace officer in relation to the statute in effect at the time he committed the offense and compare it to the aggravated assault statute in effect when Noyola's parole was revoked. [28] In reviewing the statute in effect at the time of his revocation, we must focus on the essential characteristics that make an offense of aggravated assault a first- or second-degree felony.

The indictment alleged that Noyola

did then and there intentionally, knowingly, or recklessly cause bodily injury to Kenneth Markos by striking him with his fist; that Kenneth Markos was then a peace officer acting in the lawful discharge of his official duty; and that the defendant knew Kenneth Markos was a peace officer; . . . .

When Noyola committed the offense of aggravated assault on a peace officer, the statute provided, in relevant, part:

(a) A person commits an offense if the person commits assault as defined by in Section 22.01 of this code and the person:

. . .

(2) threatens with a deadly weapon or threatens to cause bodily injury or causes bodily injury to . . . a peace officer, . . . [29]

An offense under this Section was designated as a third-degree felony, unless the person used a deadly weapon. [30] If a deadly weapon was used, the offense was a felony in the first degree. [31]

When Noyola's parole was revoked, Section 22.02 read, in part, as follows:

(a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:

(1) causes serious bodily injury to another, including the person's spouse; or

(2) uses or exhibits a deadly weapon during the commission of the assault.

(b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if the offense is committed:

. . .

(2) against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant; . . . . [32]

A comparison of these statutes leads us to conclude, as we did in *Byrd,* [33] that the

---

**25.** *Id.* at 388.

**26.** 162 S.W.3d at 253 (emphasis in original).

**27.** *Ex parte Thompson,* 173 S.W.3d at 461.

**28.** *Id.* at 460; *Ex parte Byrd,* 162 S.W.3d at 253; *Ex parte Mabry,* 137 S.W.3d at 59–60.

**29.** Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp.1992) (as amended by Acts 1991, 72nd Leg., ch. 334, § 2).

**30.** Tex. Penal Code Ann. § 22.02(c).

**31.** *Id.*

**32.** Tex. Penal Code Ann. § 22.02 (Vernon Supp.2004–05).

**33.** 162 S.W.3d at 253–54.

1992 version of the aggravated assault statute that Noyola was convicted under is the statutory predecessor to the 2004 version of the assault statute codified in Section 22.01 of the Penal Code. When the offense concerns a peace officer, there is a marked difference between the elements contained in the 1992 and 2004 versions of Section 22.02. In particular, the 1992 version contained the element "bodily injury" and was elevated to a first-degree felony only if the person used a deadly weapon.[34] The 2004 version, in contrast, required a showing of either "serious bodily injury" or the use or exhibition of a deadly weapon during the commission of the offense. If either one of those elements was present, and the offense was against a public servant, the offense was classified as a first-degree felony.

Noyola was convicted of causing bodily injury to a peace officer. The offense did not involve the use of a deadly weapon. The criminal conduct underlying Noyola's 1992 conviction does not satisfy the elements for a first—or second-degree conviction under the 2004 version of the aggravated assault statute. As a result, the aggravated assault offense that Noyola committed, and was convicted of, in 1992 is not a statutory predecessor to the aggravated assault offense defined in the 2004 version of Section 22.02.

The statutory successor to the offense Noyola committed in 1992, however, is found in the 2004 version of the assault statute, Section 22.01 of the Penal Code. Section 22.01(a)(1) prohibited "intentionally, knowingly, or recklessly caus[ing] bodily injury to another."[35] The offense was designated a third-degree felony if the of-

fense was directed at a public servant.[36] When Noyola's release was revoked, Section 508.149(a) did not include the offense of assault under Section 22.01 of the Penal Code in the list of offenses that rendered a prisoner ineligible for release to mandatory supervision. Noyola, therefore, was not "a person described by Section 508.149(a)" when his release was revoked. As a result, we find that Noyola satisfied the first condition entitling him to street-time credit under Section 508.283(c) and consider whether he satisfied the second condition.

Based on an affidavit filed by the Review and Release Processing Section of TDCJ's Parole Division, the State concedes that on the date that the pre-revocation warrant was issued initiating the revocation process, the remaining portion of Noyola's eighteen-year sentence for burglary of a habitation was less than the amount of time Noyola spent on parole. Nothing in the record compels us to disagree with TDCJ's time-credit calculation. When Noyola was released to parole, he had approximately seven years, eight months, and twelve days to serve until his sentence discharged. Noyola spent approximately four years and five days on parole before the warrant initiating the revocation process was issued. Therefore, the remaining portion of Noyola's sentence on the date the pre-revocation warrant issued was less than the amount of time Noyola spent on parole. Noyola has satisfied the second condition entitling him to street-time credit under Section 508.283(c).

## Conclusion

Noyola is entitled to relief. Noyola's eligibility for street-time credit under Sec-

**34.** Tex. Penal Code Ann. § 22.02(c) (Vernon Supp.2002).

**35.** Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp.2002).

**36.** Tex. Penal Code Ann. § 22.01(b)(1).

tion 508.283(c) is controlled by the version of Section 508.149(a) in effect at the time of his revocation. Noyola's 1992 conviction for aggravated assault on a peace officer in the third degree was not one of the enumerated offenses in Section 508.149(a). Also, Noyola's offense was not a precursor offense to the first- and second-degree-felony offenses listed in Section 508.149(a) when his release was revoked. Finally, the remaining portion of Noyola's sentence was less than the amount of time Noyola spent on parole. As a result, Noyola is entitled to street-time credit for the period of time he spent on parole between 2002 and 2004. Noyola's remaining claims are denied. TDCJ is ordered to credit Noyola's eighteen-year sentence for burglary of a habitation accordingly. Copies of this opinion shall be sent to TDCJ–CID and the Board of Pardons and Paroles.